[Civ. No. 6975, First Appellate District, Division Two.—March 25, 1930.]

CHARLES W. BROWN et al., Respondents, v. MONTGOMERY WARD & COMPANY, INC. (a Corporation), et al., Appellants.

Hadsell, Sweet & Ingalls and Snook & Snook & Chase for Appellants.

Dunn, White & Aiken and Hamilton Wright for Respondents.

STURTEVANT, J.—Mrs. M. A. Brown was struck by an automobile which was being driven by one of the employees of Montgomery Ward & Co. She died of the injuries sustained. Her heirs sued for damages. From a judgment in favor of the plaintiffs the defendants have appealed.

The defendants claim that the evidence did not show that at the time of the accident the defendant Vinje, who was driving the automobile, was acting within the scope and course of his employment. Mr. Vinje is an accountant; he owns his automobile and resides in Berkeley. At the time of the accident he was a traveling auditor for the defendant Montgomery Ward & Co. That company maintains a store in Oakland and a chain of stores located in different parts of the state. The head auditor is attached to the Oakland store. He has an assistant. Besides that assistant the company has two or more traveling auditors. From time to time the head auditor and the traveling auditor, as the witnesses testified, "lay out a *program* of audits for a trip." That program includes certain designated stores and a certain designated period for the trip. Mr. Vinje was paid a certain sum per week and he was allowed to travel in his own automobile and the company paid him nine cents per mile. That mileage was computed as follows: When he left his house the mileage was computed from the house to the first store, which was at Merced; thence to Tulare; thence to

Hanford; thence to Salinas, and thence home. The work laid down in the program had to be done within the period therein stated; otherwise, Mr. Vinje commenced work, continued work, or stopped work at such time or times as he chose, worked or traveled on such hours as he chose, and was not under any order or orders in any respect. When auditing a store he usually worked during the working hours of that particular store, but sometimes took work to his hotel. When traveling he usually traveled during working hours, but sometimes started a trip earlier in the day or finished later in the day. As each store was audited a report was made out. One copy was mailed to the Chicago office and one to the Oakland office.

On Monday, about ten days prior to the accident, Mr. Vinje left his home to audit the stores located at Merced, Tulare, Hanford and Salinas. He traveled in his automobile and carried with him a typewriter and some books of instruction which were the property of Montgomery Ward & Co. At about 3 o'clock on Friday, July 29, 1928, he had finished auditing the store at Salinas, which was the last store on his program, and had written out his reports. He put the typewriter, books of instruction and Salinas reports in his automobile and started toward his home in Berkeley. As he traveled north he passed by the Oakland store, but did not stop. It was then 7:45 P. M. and the store had closed at 5 P. M. He continued on his way to his home in Berkeley and returned to the store Monday morning. While traveling between the Oakland store and his home the accident happened.

Under the foregoing facts it is patent that Mr. Vinje was employed by Montgomery Ward & Co.; that he was so employed on a fixed wage or salary; that it was his duty to go to places designated on his program and at each place to audit the books of his employer's store located at that place; that it was his duty to audit such books according to certain written instructions contained in books of instruction which were delivered to him; that while hours of work and travel were not prescribed in detail a general limit was placed on the time within which the program would be completed, and that when the program was completed it was the duty of the employee to return to the head office for further assignments. As the employee was not restricted from making some short

days, neither was he restricted from working some long days. As the stores on his program were at a distance necessarily he was compelled to go to each and finally return. Moreover, the facts show that his employer not only knew that he would travel by automobile, but his employer paid for its use nine (9) cents a mile from the time the employee left his home until he returned to his home. That at a certain store the employee might have short hours or long hours and that in traveling he might travel either late or early was in the interest of the employer rather than against it. Moreover, such facts were expressly contemplated by the terms of the contract.

The defendants do not claim Mr. Vinje was an independent contractor. Their claim is merely that at the time and place of the accident he was not acting within the scope and course of his employment. However, we think the foregoing facts show that he was. If his employer would contend otherwise, then it should specify the hours of labor and the hours of travel or the employer should keep the store open to receive belated employees. If the accident had happened between Salinas and Oakland the defendants would not even make the contention which they now make. After Mr. Vinje arrived at the Oakland store and found it closed, under the terms of his contract of employment, he was entitled to go to his home. Whether his program ended on arriving at his home or ended when, on Monday morning, he arrived at the office need not be determined. It had not ended when the accident occurred.

■ The defendants claim the decedent was guilty of contributory negligence. The decedent left the northeast corner of Thirty-fifth Street and started to walk diagonally across Telegraph Avenue to a mail-box. She was seen to leave the sidewalk, but no witness testified that she did or did not look for passing vehicles. As she walked up the street she was, in the beginning, walking diagonally across the right-hand zone of the street. The defendants argue that as she could not see vehicles traveling on the right-hand side of the street without looking over her shoulder, she was guilty of contributory negligence. But there is no evidence she did not look over her shoulder. The point is without merit.

■ In reply to a question that was not objected to, Mrs. Wasson made quite a long statement. Some of the substance

was pertinent to the issues. Some was not. Defendants' counsel made a motion: "I ask that be stricken out as not responsive, and irrelevant, incompetent and immaterial." The motion was too broad. The court did not err in denying it.

The surviving husband gave testimony regarding the extent to which the deceased managed the family purse, the length of time and the success of her management. Included in the statement was some matter regarding her contributions from moneys which she had been given by a brother. The defendants made a motion to strike. It was denied. The same comment as above is pertinent to the form of the motion.

The witness Hemphill testified as to some brake tests which he had made. No objection was made as to any question. After he had finished and just before he was leaving the stand the defendants made a motion to strike out. The attack came too late.

Finally it is claimed the trial court erred in giving an instruction on the last clear chance doctrine. It will be enough to say that the instruction complained of is not addressed to the subject of the last clear chance.

The judgment is affirmed.

Nourse, Acting P. J., and Burroughs, J., *pro tem.*, concurred.